IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| VICTORIA NATHANSON, | § § § | |
| *Plaintiff*, | § § | 5-18-CV-00167-RBF |
| vs. | § § | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION[1]; | § § § § | |
| *Defendant*. | § § § | |

## ORDER

This Order concerns Plaintiff Victoria Nathanson's request for judicial review of the administrative denial of her application for supplemental security income under Title XVI of the Social Security Act. *See* 42 U.S.C. §1383(c)(3). This action comes to the undersigned pursuant to 28 U.S.C. § 636(c), consistent with the parties' expressed consent. *See* Dkt. Nos. 3, 6 & 8. This Court has jurisdiction to review a final decision of the Social Security Administration. *See* 42 U.S.C. § 1383(c)(3) (incorporating § 405(g)).

After considering Nathanson's Brief, Dkt. No. 10, the Brief in Support of the Commissioner's Decision, Dkt. No. 11, Nathanson's Reply, No. 12, the transcript of the administrative proceedings ("Tr."), Dkt. No. 7, the other pleadings on file, the applicable authority, and the entire record in this matter, the Administrative Law Judge's ("ALJ") decision is **REVERSED** and this matter is **REMANDED** to the Commissioner for further consideration, as discussed below.

---

[1] Nancy A. Berryhill no longer holds the title of Acting Commissioner, and no other Acting Commissioner has been named. The office of Commissioner is presently vacant, and the caption has been amended accordingly.

## I. Background

Plaintiff Victoria Nathanson filed applications for supplemental security income and for disability-insurance benefits on August 31, 2012, alleging disability with an onset date of December 1, 2001, due to bipolar disorder, depression, and anxiety. *See* Tr. 103-47. Nathanson has a 12th-grade education, has completed one year of college course work, *see id.* 580, and has prior relevant work experience as a restaurant manager and waitress, *see id.* 78.

Nathanson's claims were initially denied on March 19, 2013, *see id.* 101-02, and again on reconsideration on June 11, 2013, *see id.* 146-47. Nathanson then requested and obtained a hearing before an Administrative Law Judge, at which Nathanson amended her onset date to May 1, 2016. *See id.* 39, 151. On January 28, 2015, the ALJ issued a decision unfavorable to Nathanson. *See* Tr. 151-61. The Appeals Council, however, subsequently remanded with instructions for the ALJ to: (1) further consider Nathanson's residual functional capacity in accordance with the applicable Social Security Regulations and Rulings and the correct age categories; (2) obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Nathanson's occupational base; and (3) identify and resolve any conflicts between the vocational expert's testimony and the information provided by the Dictionary of Occupational Titles ("DOT") and its companion publication, the Selected Characteristics of Occupations. *Id.* 169-71.

On remand, the ALJ held a hearing on November 12, 2016, which Nathanson and her attorney attended; both Nathanson and vocational expert Elizabeth Wheeler testified. *See id.* 68-98. Nathanson, at the hearing, amended her alleged onset date once again, this time to August 31, 2012. She also withdrew her Title II claim. *See id.* 70-73.

On December 27, 2016, the ALJ again denied Nathanson's claim for benefits. *See id.* 11-21. The ALJ applied the required five-step sequential analysis. At step one of the analysis, the ALJ found that Nathanson had not engaged in substantial gainful activity since her amended alleged onset date of August 31, 2012. *Id.* 13. At step two, the ALJ found that Nathanson had the severe impairments of affective disorder, anxiety, mild Crohn's disease, and obesity. *Id.* At step three, the ALJ found that none of these impairments meet or medically equal the impairments of one of the listed impairments in the applicable Social Security Regulations. *Id.* 14-15.

Before reaching step four of the analysis, the ALJ found that Nathanson retains the physical residual functional capacity to "lift and carry 50 pounds occasionally and 25 pounds frequently, stand/walk/sit 6 hours compiled of an 8-hour day, and never climb ladders, work at dangerous heights, or around dangerous or heated machinery." *Id.* 15. With respect to Nathanson's mental residual functional capacity, the ALJ limited Nathanson to unskilled simple entry-level work and only occasional contact with the general public. *Id.* While the ALJ determined that Nathanson needs customary breaks, she determined that Nathanson can "concentrate and pay attention acceptably." *Id.* In making this residual-functional-capacity assessment, the ALJ concluded that Nathanson's statements regarding the type, severity, and frequency of her symptoms and limitations were not substantiated by the "clinical findings and longitudinal records" set forth in the treatment notes of Nathanson's long-term treating psychiatrist, Dr. Gary Penny. *Id.* 17. Indeed, citing Dr. Penny's treatment notes, the ALJ discounted all medical opinions of record. *Id*. 17-20.

Dr. Penny's conclusions and treatment notes bear further discussion. According to Dr. Penny, Nathanson—who Dr. Penny diagnosed with bipolar disorder, panic syndrome, and attention deficit hyperactivity disorder ("ADHD")—has "extreme" limitations in her ability to do

the following: (1) maintain attention for extended periods; (2) perform activities within a schedule or maintain regular attendance and be punctual with customary tolerances; and (3) complete a normal workday or workweek without interruptions from psychologically based symptoms. *Id.* 642-44.

Dr. Penny further concluded that Nathanson experiences "marked limitations" in her ability to: (1) understand, remember, and carry out detailed instructions; (2) make simple work-related decisions; (3) perform at a consistent pace with a standard number and length of rest periods; and (4) interact appropriately with the general public. *Id.*

Finally, Dr. Penny determined that Nathanson would be "moderately" limited in her ability to: (1) remember locations and work-like procedures; (2) work in coordination with or in proximity to others without being distracted by them; (3) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (4) respond appropriately to changes in work settings; and (5) travel in unfamiliar places or use public transportation. *Id.*

Based on these limitations, Dr. Penny determined that Nathanson would average four or more absences per month. *Id.*

The ALJ, however, afforded "little weight" to Dr. Penny's assessment of Nathanson's mental capacity. *Id.* 19. In doing so, the ALJ reasoned that Dr. Penny's "restrictive opinions" "are not supported by [his] own treatment notes and [his] clinical findings documenting normal mental status examinations, euthymic mood, and a good response to medication." *Id.* 20. The ALJ further determined that Dr. Penny's conclusions are inconsistent with Nathanson's "substantially intact daily activities and social functioning" and that Dr. Penny's notation that Nathanson did not use alcohol appeared inconsistent with more recent, but unspecified, evidence in the record. *Id.*

The ALJ also largely discounted the opinion of consultative examiner Dr. Sean Connolly. Tr. 20. Nathanson's global assessment of functioning score ("GAF") of 50—which the ALJ acknowledged indicates "serious symptoms [in social and occupational functioning]"[2]—is only a "snapshot" of Nathanson's functioning at the time she was examined, the ALJ noted. *Id*. This score, the ALJ reasoned, is "not consistent with [Nathanson's] longitudinal treatment history and sustained serial clinical findings [as set forth in Dr. Penny's treatment notes]." *Id*. Those notes, according to the ALJ, "indicate [that] a lesser degree of limitation has been present since the onset of treatment. *Id*. The ALJ, however, afforded "some weight" to Connolly's opinion that Nathanson "can follow simple instructions." *Id*.

Finally, the ALJ accorded "little weight" to the opinions of the three state agency psychologists—Doctors Langsford, Wong, and Alexander—who each opined that Nathanson is able to understand, remember, and carry out detailed but not complex instructions. *Id.* 110, 132, 567. In reaching this conclusion, the ALJ once again invoked Dr. Penny's notes and determined that Nathanson's "longitudinal record reveals [she] responded well to her medications and treatment with Dr. Penny and that she was actually able to take multiple trips out of town, attend concerts go to the park, and drive throughout the period at issue." *Id.* 20.

After effectively discounting *all* of the above-referenced opinions, the ALJ then briefly set forth the following basis for her mental residual-capacity assessment:

> The limited amount and type of abnormal clinical findings, the longitudinal treatment records documenting a positive response to treatment, and [Nathanson's] daily activities and social functioning indicate that, despite some degree of persistent moderate severity symptoms secondary to her affective and anxiety disorders, she remains capable of unskilled, simple entry level work

---

[2] *See also Boyd v. Apfel*, 239 F.3d 698, 702 (5th Cir. 2001) (explaining that "[a] GAF score of 41 to 50 is classified as reflecting "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)") (citing DSM–IV, p. 32).

> permitting customary breaks but she remains able to concentrate and pay attention acceptably provided she is limited to situations involving only occasional contact with the general public.

*Id.* 20-21.

At step four of the analysis, after considering Nathanson's residual functional capacity and the testimony of the vocational expert, the ALJ determined that Nathanson was unable to perform any of her past relevant work. *See id.* 21.

At step five, however, the ALJ found that considering Nathanson's age (she was 59 years old at the time of the decision), educational factors, prior work experience, and residual functional capacity, as well as the testimony of the vocational expert, there were jobs in significant numbers in the national economy that Nathanson could perform, namely the positions of dishwasher (DOT 318.687-010), janitor (DOT 381.687-018), and housekeeper (DOT 323.687-010). Accordingly, the ALJ determined that Nathanson is not disabled for purposes of the Act and therefore not entitled to receive benefits. *Id.*

Nathanson's subsequent request for review of the ALJ's decision was denied by the Appeals Council. *Id.* 1-7. Accordingly, on March 13, 2017, after exhausting all available administrative remedies, Nathanson filed this action for judicial review. Dkt. No. 1. Although Nathanson now seeks judicial review of the ALJ's denial of disability insurance benefits pursuant to both Titles XVI and II of the Social Security Act, she concedes that she withdrew her Title II claim at the administrative level. *See* Dkt. No. 10 at 2 (citing Tr. 70-73). Accordingly, the Court will only evaluate the merits of Nathanson's Title XVI claim because the Title II claim is not properly presented here.

## II. Legal Standards

*Standard of Review*. In reviewing the denial of benefits, a court determines only whether the Commissioner's decision applied the proper legal standards and is supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

A reviewing court will "weigh four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [the claimant's] age, education, and work history." *Martinez*, 64 F.3d at 174. "'[N]o substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

A reviewing court does not re-weigh the evidence or substitute its judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence and credibility assessments are for the Commissioner, not a court, to resolve. *Id.* Fact findings supported by substantial evidence are conclusive; legal conclusions and claims of procedural error are reviewed *de novo*. *See Greenspan v. Shalala*, 38 F.3d 232, 235 (5th Cir. 1994); *Carr v. Apfel*, 133 F. Supp. 2d 476, 479-80 (N.D. Tex. 2001).

*General Entitlement to Benefits*. The term "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant like Nathanson is disabled only if her physical or mental impairment or impairments are so severe that she is unable to perform his previous work and cannot—considering her age, education, and work history—participate in any other kind of substantial gainful work that exists in significant numbers in the national economy and regardless of whether such work exists in the area in which she lives, a specific job vacancy exists, or she would be hired if he applied for work. 42 U.S.C. §§ 423(a)(1), 1382c(a)(3)(B).

*Overview of the Evaluation Process and Burden of Proof*. "To prevail on a claim for disability benefits, a claimant must establish a physical or mental impairment lasting at least twelve months that prevents [him] from engaging in any substantial gainful activity." *Carr*, 133 F. Supp. 2d at 479. To determine whether substantial gainful activity is possible, the pertinent regulations require a five-step sequential inquiry. *See id*.; 20 C.F.R. §§ 404.1520, 416.920.

At the first step, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means "the performance of work activity involving significant physical or mental abilities for pay or profit." *Newton*, 209 F.3d at 452-53 (citing 20 C.F.R. § 404.1572(a)-(b)). An individual working and engaging in substantial gainful activity will not be found disabled, regardless of medical condition or age, education, and work experience. 20 C.F.R. § 404.1520(b).

Step two addresses whether the claimant has a medically determinable physical or mental impairment that is severe, or a combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). "[A]n impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on

the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101 (quotation marks omitted). An individual without a "severe impairment" will not be considered disabled. 20 C.F.R. § 404.1520(c).

At step three, an individual who has an impairment that meets or is medically equal to the criteria of a listed impairment in Appendix 1 of the regulations ("the Listings") will be considered disabled without the consideration of other vocational factors. 20 C.F.R. § 404.1520(d). But if the claimant does not qualify under the Listings, then the evaluation continues to the fourth step. Before commencing the fourth step, the claimant's residual functional capacity is assessed. This involves a "multidimensional description of the work-related abilities" a claimant retains despite medical impairments. 20 C.F.R. § Pt. 404, Subpt. P, App. 1; *see also* 20 C.F.R. § 404.1520(e); *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005).

At the fourth step, the residual-functional-capacity assessment and the demands of the claimant's past relevant work are reviewed. 20 C.F.R. § 404.1520(f). Past relevant work constitutes either "the actual demands of past work" or "'the functional demands . . . of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen,* 829 F.2d 524, 527 n.2 (5th Cir. 1987) (quoting SSR 82-61). If an individual is capable of performing the work she has actually performed in the past or as defined by the DOT, a finding of "not disabled" will be made. 20 C.F.R. § 404.1520(f).

The fifth step evaluates the claimant's ability—given residual capacities, age, education, and work experience—to perform other work. 20 C.F.R. § 404.1520(g). If an individual's impairment precludes performing any other type of work, the claimant will be found disabled. *Id.*

The claimant bears the burden of proof at the first four steps of the evaluation process. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Once the claimant satisfies his burden at each of the first four steps, the burden then shifts to the Commissioner at step five to show there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner adequately points to potential alternative employment, the burden shifts back again to the claimant to prove inability to perform that work. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989). A finding that a claimant is not disabled at any point in the five-step evaluation is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**III.   Analysis**

At issue is whether reversible error occurred in connection with ALJ's assessment of Nathanson's mental residual functional capacity. It did. Under the circumstances presented here, the ALJ should have contacted Dr. Penny to ascertain the basis for his opinion. The ALJ's failure to do so rendered the record in this case underdeveloped and insufficient to support the ALJ's decision on the weight to afford the medical opinions of record on Nathanson's mental residual functional capacity. This error was not harmless under these circumstances and, therefore, remand is required.

*Dr. Penny's treatment records*. In assessing Nathanson's mental residual functional capacity, the ALJ assigned little weight to all medical opinions of record because they were allegedly inconsistent with Nathanson's "longitudinal treatment history" as set forth in Dr. Penny's treatment notes. The treatment notes, however, are not comprehensive or even clear;

they appear to be personal handwritten notes written by Dr. Penny to himself. Rather than contacting Dr. Penny to ascertain the basis for his opinion and its relationship with matters mentioned or alluded to in his notes, the ALJ appears to have simply referenced and credited select, incomplete *portions* of Dr. Penny's handwritten treatment notes. These include almost indecipherable notations in which Dr. Penny noted that Nathanson appeared "stable" or presented euthymic. *See* Tr. 17-20. And the notes also include swaths of notations that are indecipherable.

To be clear, Dr. Penny's notes are often illegible and are drafted in outline format. While certain legible portions of the notes certainly can be seen to show Nathanson experienced *periods* of stability or improvement within the more than 10-year treatment period, other illegible entries could very well indicate that Nathanson experienced substantial periods of instability or depression. Such information about instability or depression, of course, would inform a decision regarding the weight to afford the medical opinions in the case. Moreover, a conclusion that Nathanson potentially experienced substantial periods of instability or depression is actually consistent with other information in the record. As Nathanson explained in testimony, she often "feels good" following a medication change but eventually reverts into a heavily depressed state. *See* Tr. 82, 88.

"The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his [or her] decision is an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). This obligation is triggered here because Dr. Penny's treatment notes on their own are too indecipherable, ambiguous, and inadequate to enable proper evaluation of his opinion, yet those notes are repeatedly invoked by the ALJ as a significant basis (if not the sole basis) for the ALJ's ultimate conclusion. *See Hyatt v. Astrue*, No. 3:11CV681-DPJ-FKB,

2013 WL 527820, at *4 (S.D. Miss. Jan. 25, 2013), *report and recommendation adopted*, No. 3:11CV681 DPJ-FKB, 2013 WL 508347 (S.D. Miss. Feb. 11, 2013). Although the Court is not aware of a decision from this circuit directly on point, there is persuasive authority reflecting that the illegibility of important evidentiary material, such as Dr. Penny's notes, warrants remand for clarification and supplementation, particularly where—as is the case here—the ALJ uses the notes as a basis to discount a treating physician's opinion. *See, e.g.*, *Minnifield v. Berryhill*, No. 3:17CV1196(DFM), 2018 WL 4380979, at *7 (D. Conn. Sept. 14, 2018) (collecting authorities); *Yamin v. Comm'r of Soc. Sec.*, No. 607-CV-1574-ORL-GJK, 2009 WL 799457, at *12-14 (M.D. Fla. Mar. 24, 2009) (collecting authorities).

It is likely that Social Security Ruling 96-5p provides further support for a remand here, although no such additional support is needed in these circumstances. Social Security Ruling 96-5p was in effect when Nathanson filed her claim,[3] and it requires an ALJ to make "every reasonable effort to recontact [treating] sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear []." SSR, 96-5P, 1996 WL 374183; *see also Cain v. Barnhart*, 193 F. App'x 357, 361 (5th Cir. 2006). Accordingly, "if the ALJ believed that there was a conflict between Dr. [Penny's] treatment notes and h[is] opinion, SSR 96-5p directs the ALJ to contact the treating physician to obtain [] clarification, which the ALJ failed to do." *Guillen v. Berryhill*, No. 3:16-CV-1397-D (BF), 2017

---

[3] Although the Court recognizes that Social Security Ruling 96-5 was rescinded on March 27, 2017, its rescission was only "effective for claims filed on or after March 27, 2017." *Foy v. Berryhill*, No. CV CBD-17-2743, 2018 WL 3707837, at *6 (D. Md. Aug. 3, 2018); *see also Henderson v. Comm'r of Soc. Sec.*, No. 4:17-CV-00039-JHE, 2018 WL 4518321, at *4 (N.D. Ala. Sept. 20, 2018); *Palistrant v. Comm'r of Soc. Sec.*, No. 16-CV-588-FPG, 2018 WL 4681622, at *4 (W.D.N.Y. Sept. 28, 2018). In addition, the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX") requires adjudicators to use SSR 96-5p "[f]or claim(s) filed before March 27, 2017" "throughout the entire appeals process." *Foy*, 2018 WL 3707837, at *6 (quoting HALLEX I-5-3-30, 2017 WL 1362776, at *5 (2017)). Accordingly, it would appear that SSR 96-5p is still relevant for purposes of Nathanson's claim.

WL 4179876, at *4 (N.D. Tex. Sept. 1, 2017), *report and recommendation adopted*, 2017 WL 4122717 (N.D. Tex. Sept. 18, 2017); *see also Spellman v. Shalala*, 1 F.3d 357, 361 (5th Cir. 1993) (explaining that "Social Security Rulings are binding on all components of the Administration") (quotations omitted).

This is not a case where it is apparent from the record that the treating provider's opinion is inconsistent with other substantial evidence in the record, or even where the basis of the treating provider's opinion is otherwise sufficiently evident to warrant affording it little or no weight. *Cf. Haynes v. Colvin*, No. 6:12-CV-00330-WSS, 2015 WL 3964783, at *7 (W.D. Tex. June 29, 2015); *Pearson v. Barnhart*, No. 1:04-CV-300, 2005 WL 1397049, at *4 (E.D. Tex. May 23, 2005). Although the ALJ stated at one point during the hearing that she believed Dr. Penny's notes were "legible," *see* Tr. 96, she also expressed considerable frustration in attempting to follow his notes, *see* Tr. 95 (explaining that she wished Dr. Penny had drafted his notes in full sentences and that she would have to "dig through" the handwriting to "make some sense out of it"). And more to the point, the Court has reviewed the entire record and is unable to comprehend a substantial portion of Dr. Penny's notes. Thus, in discounting Dr. Penny's opinion, the ALJ could not have made a sufficiently "informed decision based on sufficient facts." *Brock*, 84 F.3d at 728.

*Harmlessness*. The ALJ's error here was not harmless. In doggedly attempting to ascertain what Dr. Penny's notes said, the ALJ could only interpret what she *thought* Dr. Penny meant by his often-indecipherable notations. This left gaps in understanding Dr. Penny's conclusions as well as gaps in the longitudinal record of Nathanson's medical history. The ALJ's reliance on no more than a series of best guesses at a crucially important factual record and medical assessment as a basis to provide little weight to Dr. Penny's conclusions—and also to

discount *all* other medical opinions of record—was too much of a stretch. Likewise, there is no basis to support the ALJ's assumption that the illegible portions of the notes do not include matters that would support the various medical opinions and undermine the ALJ's ultimate conclusion. Fuller development and clarification of this evidence is particularly important in light of the severe limitations noted by Dr. Penny, as well as the vocational expert's testimony that Nathanson would not be able to maintain employment if she were consistently off task more than ten percent of the day. *See* Tr. 93. And the harmful nature of this error is only compounded by the ALJ's apparent decision to draw her own independent conclusions—based on an incomplete treatment record—regarding the effects that Nathanson's mental impairments have on her ability to work. *See Williams v. Astrue*, 355 Fed. App'x 828, 832 n. 6 (5th Cir. Dec. 10, 2009) (noting, "an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *see also Raper v. Colvin*, 262 F. Supp. 3d 415, 423 (N.D. Tex. 2017) (collecting cases holding that an ALJ is not permitted to reject all relevant medical opinions and then independently assess a claimant's residual functional capacity without medical evidence addressing effects of the claimant's impairments on the claimant's ability to work).

Because substantial evidence in the current record does not support the ALJ's mental residual-functional-capacity assessment—at best there is only cherry-picked evidence taken from an underdeveloped, incomplete record—it is more than conceivable that the ALJ could have reached a different determination at step five had she fully and fairly developed the record by contacting Dr. Penny. *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) ("[I]t is clear that the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that

supports his[or her] position."). This likely would have required only little effort on her part.[4] As a result, remand for further development of the record and to ensure that the ALJ's decision rests on sound medical judgment is necessary. *See Garcia v. Berryhill*, No. EP-17-CV-00263-ATB, 2018 WL 1513688, at *3 (W.D. Tex. Mar. 27, 2018) ("[T]he Courts of Appeal agree that analyzing the raw medical data in contravention of all physician assessments, or without a physician assessment, is reversible error.").

*Remand Instructions*. For the reasons discussed above, remand is appropriate. On remand, the ALJ shall contact Dr. Penny to ascertain the basis for his medical opinion regarding Nathanson's ability to work. The ALJ shall then fully develop her findings regarding the proper weight to afford to all medical opinions of record. She shall also perform a detailed analysis of Dr. Penny's views under the criteria set forth in 20 C.F.R. § 404.1527(c)[5] to the extent she still decides to afford his opinion little, no, or even partial weight.[6] If necessary, the ALJ shall hold another hearing and obtain new vocational expert testimony.

---

[4] *See Cullin v. Comm'r of Soc. Sec.*, No. CIV.A. 12-10279, 2013 WL 951068, at *8 (E.D. Mich. Jan. 25, 2013), *report and recommendation adopted*, 2013 WL 951051 (E.D. Mich. Mar. 12, 2013).

[5] The undersigned is aware that the Social Security Administration published a new rule, applicable to claims filed on or after March 27, 2017, that eliminated the treating physician rule. *See* 20 C.F.R. § 404.1520c. Because Nathanson's claim was filed prior to this date, the pre-amendment version of the rule applies here. *See* 20 C.F.R. § 404.1527 ("For claims filed . . . before March 27, 2017, the rules in this section apply. For claims filed on or after March 27, 2017, the rules in § 404.1520c apply.").

[6] *See, e.g.*, *Stapleton v. Berryhill*, No. 2:16-CV-251, 2018 WL 1449397, at *10 (N.D. Tex. Mar. 7, 2018), *report and recommendation adopted*, No. 2:16-CV-251-D, 2018 WL 1426901 (N.D. Tex. Mar. 22, 2018) ("[I]f declining to give a treating source medical opinion 'controlling weight,' an ALJ must consider the [404.1527] factors . . . "); *Conte v. Comm'r, SSA*, No. 4:16-CV-00048-CAN, 2017 WL 1037570, at *5 (E.D. Tex. Mar. 16, 2017); *Richardson v. Colvin*, 4:15-CV-0879-BL, 2017 WL 237637, at *9 (N.D. Tex. Jan. 17, 2017); *McKellar v. Colvin*, No. CV H-15-3298, 2016 WL 7742812, at *9 (S.D. Tex. Aug. 19, 2016); *Neal v. Colvin*, No. A-14-CV-906-AWA, 2015 WL 5098796, at *4 (W.D. Tex. Aug. 31, 2015); *Valadez v. Barnhart*, No. CIV.A. SA04CA1176XR, 2005 WL 2648329, at *6 (W.D. Tex. Oct. 11, 2005).

### IV. Conclusion

For the reasons discussed above, the ALJ's decision that Nathanson is not disabled is **REVERSED** and this case is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this opinion.

**IT IS SO ORDERED**.

SIGNED this 1st day of March, 2019.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE